UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | USDC No. 21-cr-555 (RCL) |
| | ) | |
| Pamela Hemphill,   *defendant*. | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid her at sentencing on May 18, 2022, when she appears before the Court for his sentencing hearing.

1. Defendant was charged by complaint in 21-mj-551 (ZMF) on August 2, 2021, with four misdemeanor offenses resulting from her involvement in the Capitol Hill protests of January 6, 2021: (a) Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1); (b) Disorderly and Disruptive Conduct Which Impedes the Conduct of Government Business, in violation of 18 U.S.C. §1752(a)(2); (c) Disruptive Conduct in the Capitol Buildings, in violation of 40 U.S.C. 5104(e)(2), and (d) Demonstrating, Picketing or Parading in a Capitol Building, in violation of 40 U.S.C. 5105(e)(2)(G) ("Demonstrating"). Those same charges were brought by criminal Information on September 1, 2021, in the instant case. On January 21, 2022, the defendant, per her agreement with the United States, entered a plea of guilty to Demonstrating, a petty offense which carries a maximum sentence up to six (6) months imprisonment, a fine of up to $5,000, a term of probation not to exceed five (5) years and a $10 special assessment. As a petty offense, the U.S. Sentencing Guidelines do not apply. (PSR,

page 3, ¶7)  The defendant agreed to pay $500.00 in restitution toward defraying the cost of repairs to the U.S. Capitol which were required after the riot.

      2.  The defendant and her counsel reviewed the draft PSR and made one objection to its assertions, regarding the wording of a report from 2005 from the Springfield, OR police department about the theft of a "Charlie Brown Comic story-board."  (PSR, page 9, ¶40)  The probation officer has not removed the words the defendant objected to in the draft.[1]

      3.  While in the Capitol or on its grounds, the defendant did not commit any violent or destructive act, either to persons or property.  Nor did she steal or attempt to steal items from the building, as did a number of other protestors.  In an odd way, this is not surprising: the building's beauty left her awestruck, feeling even exalted.

      4. The defendant and her counsel have reviewed the government's sentencing memorandum.  It presents a powerful description of the defendant's conduct on January 6.  Many, if not all, of its factual assertions are inarguable.  The defendant can best assist the Court, in counsel's view, by providing background about the defendant, including her motivation in coming to Washington, her background as a civilian in helping law enforcement, her personal history, which is amply developed in the PSR, all of which help in understanding her conduct during the Capitol protest and eventual riot.

      5.  The defendant believed that the presidential election was stolen from President Trump.  She came to Washington to attend the "Stop the Steal" rally and to hear Mr. Trump address the crowd.  At the same time, the defendant, who styles herself a "citizen journalist," also wished to

---

[1] Defendant believes that the note presents her in a false light, could even be considered defamatory as it imputes criminal conduct on her part by asserting she tried to cast, meaning deflect, blame on others for her own conduct.  In fact, it does not appear that the case was closed with the arrest and prosecution of anyone for putative theft.  Defendant requests that the Court order the probation office to remove the offending language.

cover the day's events, which she did by live-streaming her attendance that day.[2] The defendant notes that she has frequently done so at public events, and has even brought to the attention of law enforcement authorities in Idaho, her home state, acts of wrongdoing so arrests can be made. She is opposed to violence of any sort, has no record of having assaulted persons or destroyed property.

6. While participating in the protest, which eventuated in her committing the offense of Demonstrating, she implored others to remain peaceful and respectful of the Capitol and its effects. In one instance, while near the entrance to the Capitol itself, she saw through a window a protester picking up a law book from what might have been Speaker Pelosi's chambers. She ordered him to put it back. He was able to hear her command through the broken window of the building, and at her direction, put back the book. The defendant spoke up because the conduct was wrong and violated the stated purpose of the protest.

7. The Court must consider, under 18 U.S.C. §3553(a) the following factors:

(a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the

---

[2] Eric Hoff, an architect and designer who lives and has known the defendant since 2016, confirms that she frequently livestreams political rallies and events that take place in the city. Her practice has been to post her videos on Facebook. The defendant reports that in Boise, she has assisted law enforcement by reporting acts of vandalism (the defacing of a Liberty Bell reproduction on the grounds of the state capitol) and threatening behavior (a woman who brought smoke bombs to a Black Lives Matter protest).

defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner….

      8. The defendant is confident that with the information already submitted, the Court already has a considerable understanding of "the nature and circumstances of the offense and the history and characteristics of the defendant." Defendant is a sixty-nine year old female who has lived in many places in her life; she has lived in Boise, Idaho, for the last eleven years. Before that, Oregon and California were the two places where she lived the longest times. (PSR, ¶49, page 11)

      9. Much of the defendant's life has been fraught with problems and abuse by those who should have been caring. Given the detail that the PSR provides, there is no need to mention, much less highlight, them here. To her credit, the defendant has overcome the abuse of alcohol which she experienced as a young woman, with the help of Alcoholics Anonymous (meetings of which she attends daily) and reliance on her religious faith, she has remained sober for about 42 years. In recent years she has weathered serious illness, including surgery and follow-up treatment for cancer.[3]

      10. The government has argued that in a misdemeanor case, the lack of violent conduct should not be considered in mitigation as it might be with one charge with a felony. Without gainsaying that point, the defendant submits that her show of respect to officers at the Capitol that day; condemnation of theft by a rioter, and urging of others to leave the Capitol peacefully, should be considered in her favor.

---

[3] The defendant came to Washington while recovering from cancer surgery, still with stitches from the operation. She remains under the care of a local physician and continues to receive Anastrozole, an oral chemotherapy drug,

11. The defendant takes issue with the assertion that she appears to feel no remorse for her conduct. She honored the Court's order not to interfere with the computer disks containing the video recordings from January 6 (they were stored in a safe deposit box and obtained by the FBI after it obtained a warrant); has complied with pretrial release conditions; cooperated with counsel; and shown respect to the Court at various hearings. The difficulty for the defendant has been to square her own efforts to record the event with partisan feelings that caused her to cross the line from legal protest to illegal behavior. The evidence makes clear that the defendant came to Washington not simply as a reporter but also as a partisan, and her video record shows that she acted as one. Abjuring violence in any form, discouraging, even condemning those who acted destructively, the defendant found it hard to come to terms with her own criminal responsibility; perhaps it's what prompts the government to conclude the defendant feels no remorse. Her unease–a kind of "cognitive dissonance"--can be expressed as: "How can I be guilty of a crime when I was trying to keep things peaceful?" By crossing a police line, then encouraging others to enter the Capitol while entering the building herself, she was no longer an observer but an actor. Despite having opportunities to turn away and leave, she returned.[4]

12. Nonetheless, a lengthy period of probation would satisfy the "need for the sentence…to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." During this time, the defendant would be answerable to the U.S. Probation Office. She would be subject to the jurisdiction of the Court, knowing that any infraction could lead to revocation of the probationary term, with incarceration to follow. Such a

---

[4] The defendant also informed law enforcement that if it concluded she had committed an offense during the riot, she was prepared to take responsibility for her conduct. These were agents of the Idaho State Police, whom she knew personally and had assisted in the past. She believed they would be able to find out from their contacts in the FBI.

term would at the same time provide deterrence specific to the defendant, operating as a disincentive to further criminal behavior.[5]

13. A lengthy term of probation would also deter generally. The public is aware from the comprehensive coverage of the January 6 events and the arrests that followed of the serious efforts the government has made to prosecute persons involved with the protests and, what in many cases, the violence that followed. These cases have been followed very closely by the press in the localities of defendants, so the public will be aware of the defendant's responsibility for her conduct. That can serve to deter others in the future in similar situations.

14. The defendant submits that a probationary term would satisfy the various §3553 factors. The Court may also impose a requirement of community service, which the defendant could perform, despite her medical needs and continuing efforts to abstain from alcohol. Last, in the event that this Court believes that incarceration, not probation, is appropriate, the defendant requests that the Court permit her to serve her time in home confinement.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

---

[5] The defendant is concerned that a term of incarceration would interfere with, if not actually prevent her from, participating in A.A. meetings, on which she has relied daily for 42 years. She wishes the Court to consider this in imposing sentence.

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Katherine Nielsen, Esq., DOJ-CRM, Fraud Section, and Sonia Mittal, Esq., U.S. Attorney's Office for the District of Columbia, this 16th day of May, 2022.

/s/
_____
*Nathan I. Silver, II*