**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Case No. 1:21-cr-555 (RCL)** |
| **PAMELA HEMPHILL,** | **:** | |
| | **:** | |
| *Defendant.* | **:** | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO**
**MOTION FOR EARLY TERMINATION OF PROBATION**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits this opposition to Defendant Pamela Hemphill's

Motion for Early Termination of Probation, ECF No. 48. Hemphill seeks early termination based

on the decision in *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023), holding that a defendant

convicted of a single petty offense may not be sentenced both to imprisonment and to probation

for that offense. *Id*. at 454. Hemphill, like Little, received a split sentence of imprisonment and

probation. Having already served the imprisonment component of her sentence, Hemphill seeks to

terminate the remaining probationary period. But early termination is not the appropriate remedy

for an illegal sentence (i.e., one in excess of the statutorily authorized term). Indeed, as reflected

in the D.C. Circuit's decision in *Little*, the proper remedy is to vacate the illegal sentence so that

the defendant may be resentenced to a lawful term. *Id.* at 461 ("So we vacate Little's sentence and

remand to the district court for resentencing."). If Hemphill's illegal split sentence were properly

challenged, the Court at resentencing should impose a term of incarceration or probation that is

within the statutory limit, recalibrating the punishment scheme to reflect the statutory sentencing

factors in 18 U.S.C. § 3553(a) and giving credit for time served under the illegal sentence

originally imposed.

On January 6, 2021, while members of Congress gathered in the United States Capitol to certify the results of the 2020 presidential election, Hemphill joined a large mob of rioters, who overwhelmed police officers and breached the Capitol building. Specifically, Hemphill (1) deliberately proceeded through police lines protecting the East front of the Capitol on three different occasions, and when stopped by law enforcement officers, she used her age as an excuse and distracted officers from their duty protecting Congress and the Capitol, while they attended to her instead; (2) encouraged other rioters to overrun the police line and enter the Capitol Building; (3) entered and remained in the Rotunda of the Capitol Building, despite clear signs of violent entry, including broken glass in the door, broken windows on either side and an audible alarm; and (4) remained with a crowd of other rioters just outside the Rotunda doors for more than 30 minutes after being escorted out of the Capitol Building by a law enforcement officer. Notably, this was Hemphill's second instance of participation in a riot that breached a police line and damaged property in a capitol building—she was also a part of the riot that broke into the Idaho Statehouse in August 2020.

Hemphill pleaded guilty to an Information charging her with illegally parading, demonstrating, or picketing in a Capitol Building on January 6, 2021, in violation of Title 40 U.S.C. § 5104(e)(2)(g). This Court sentenced Hemphill to a "split sentence"—a term of imprisonment and a term of probation—under 18 U.S.C. § 3561(a)(3): 60 days' incarceration followed by 36 months' probation, $500 in restitution, and a $10 special assessment. *See* Amended Judgment. ECF No. 42. She has served her 60-day prison term, and now asks this Court to terminate her 36-month term of probation. ECF No. 48. The Court should deny this motion both because terminating the probation portion of an illegal split sentence is not the proper avenue for

remedying the illegality of that sentence and because Hemphill has not presented any other grounds warranting termination.

I.   **Factual Background**

On November 15, 2022, the Government filed in this Court a comprehensive Sentencing Memorandum which included multiple video and social media exhibits that detailed Hemphill's participation in the riot at the Capitol, ECF No. 32. The Government incorporates by reference its Sentencing Memorandum, and the arguments made at the Sentencing Hearing in this case, which took place on May 24, 2022. Without rehashing the entire factual background from the Government's Sentencing Memorandum, some points of Hemphill's conduct that warrant continued emphasis are included below.

On December 28, 2020, Hemphill posted encouragement to go to Washington, D.C. for January 6, saying "its a WAR!" On January 1, 2021, she posted a message "on my way to Washington DC January 6th" with a photo in which she appears to be holding a firearm.

On January 5, 2021, Hemphill flew to Washington, D.C. from Idaho. On that same evening, she attended an outdoor event in Washington, D.C., where she filmed her interactions with the crowd. In the video, Hemphill can be heard telling one man in the crowd, "Let's do this; let's go to the Capitol. We did it in Boise." This is a reference to the storming of the Idaho Statehouse by protestors of COVID-19 restrictions on August 24, 2020, which involved Ammon Bundy and resulted in the shattering of a glass door in the Statehouse, as protestors pushed past law enforcement officers to enter the gallery of the building. Hemphill was involved in the Idaho Statehouse breach and videoed the incident from the front of the crowd.

On January 6, 2021, Hemphill walked to the Capitol Building and was in the front of the crowd that confronted U.S. Capitol Police and other law enforcement officers attempting to keep

the rioters behind the metal bike-rack barriers set up to keep them out of the restricted area on the East side of the Capitol grounds. While other rioters pushed against these barriers, Hemphill filmed herself passing through the barriers. When approached by a law enforcement officer, Hemphill tried to convince the officer to let her stay inside the barriers, claiming she feared injury from the crowd that was pushing against the bike-racks. After the officer told Hemphill to go back behind the barriers at a different spot, Hemphill rejoined the crowd, but encouraged others to break through the barriers on her way back, saying, "You just gotta come in…. It's your house. Come on in."

Hemphill was at the front of the line of rioters who pushed through the barriers on the East side of the Capitol Building a second time, having repositioned herself after being sent back behind the barriers the first time. Hemphill breached the police line a third time a few minutes later at the steps in front of the East Rotunda doors at the center of the Capitol Building. Hemphill fell to her knees as the rioters pushed through the line and was helped up by a law enforcement officer. Law enforcement officers assisted Hemphill to the side of the steps, but Hemphill refused to leave the steps when instructed to do so by another U.S. Capitol Police officer who was trying to get her out of the crowd. Hemphill remained on the steps of the Capitol building for at least another 20 minutes, while rioters streamed by, making no effort to distance herself from the mob.

At approximately 3:01 p.m. on January 6, 2021, Hemphill voluntarily entered the Capitol Building through the East Rotunda doors along with other rioters and entered the Rotunda. After leaving the Capitol Rotunda at approximately 3:10 p.m., Hemphill asked an officer to help her leave the Capitol Building, again claiming fear of injury from the crowd, and the officer escorted her out. After exiting the Capitol building through the House South entrance, Hemphill returned to the exterior of the East Rotunda doors and remained there for at least an additional 37 minutes,

4

filming the rioters at they screamed at the officers inside the East Rotunda doors and conversing with other rioters. Hemphill boasted that she had been in the Capitol Building and "was the first one up here." In contemplating the broken glass in the East Rotunda door, Hemphill said she had "brok[en] the same glass in Boise, Idaho," referring to the breach of the Statehouse in August 2020.

Hemphill later falsely claimed that she had been pushed into the Capitol by other rioters and that she helped law enforcement officers that day by trying to keep rioters out of the building.

## II.   <u>Procedural Background</u>

On August 2, 2021, the United States charged Hemphill by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On September 1, 2021, the United States charged Hemphill by Information with violating the same charges, and she pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G) on January 21, 2022 pursuant to a plea agreement.

For her conviction on a single count of violating 40 U.S.C. § 5104(e)(2)(G), Hemphill faced a maximum of six months of imprisonment and a fine of up to $5,000, as well as $500 in restitution under the terms of her plea agreement.

At sentencing on May 24, 2022, this Court noted the "serious[ness]" of Hemphill's offense and that she "egg[ed] the crowd on" at the Capitol on January 6. Sentencing Tr., ECF No. 44, at 17. The Court also suggested Hemphill's statement was sincere and noted that she appeared to know that she made a mistake. *Id*. At 18. Weighing these and other factors, this Court sentenced Hemphill to 60 days' incarceration followed by 36 months' probation, $500 in restitution, and a $10 special assessment. Hemphill has served her 60-day prison term.

On December 28, 2023, Hemphill filed a Motion for Termination of Probation (ECF No. 82) pursuant to 18 U.S.C. § 3564(c),[1] based on *Little*, which held that a defendant convicted of a single petty offense may not be sentenced both to imprisonment and to probation for that offense. 78 F.4th at 454. On January 18, 2024, this Court denied the government's subsequent request to hold Hemphill's motion in abeyance pending the D.C. Circuit's decision in *United States v. Caplinger*, Case No. 22-3057, and ordered the Government to respond to it.

Hemphill's Probation Officer represents that Hemphill has been compliant with the terms of her probation. Hemphill maintains an active social media presence and has appeared in interviews with CNN and other media outlets.[2] At times, her statements are inconsistent with acceptance of responsibility.[3] However, since being incarcerated, she has also made statements consistent with acceptance.[4]

## III.   Resentencing Is The Appropriate Remedy For An Unlawful Split Sentence Of Incarceration And Probation

---

[1] *See* Order, ECF No. 50, at 1 n.1 (construing Hemphill's motion for early termination of probation as a motion for termination of probation under 18 U.S.C. § 3564(c)).

[2] *See, e.g.*, CNN politics, *Former Trump Supporter Says she was Brainwashed*, https://www.cnn.com/videos/politics/2023/07/06/pam-hemphill-donald-trump-january-6-brainwashed-ac360-vpx.cnn (last accessed Jan. 31, 2024).

[3] *See, e.g.*, Gateway Pundit, Video of Newsmax interview at timestamp 1:20, https://www.thegatewaypundit.com/2022/07/really-frightened-scared-69-yr-old-grandma-drug-counselor-cancer-patient-joins-greg-kelly-sent-prison-tuesday-walking-inside-us-capitol-video/ (last accessed Jan. 31, 2024) (Hemphill stating that she was pushed into the Capitol).

[4] *See, e.g.*, Mochas with MAGA, *I was in a Cult. Now I'm Speaking out Against It*, at timestamp 1:00, 5:55 https://www.youtube.com/watch?v=7l3YgDkeX0E (last accessed January 31, 2024) (Hemphill stating that she pleaded guilty because she was guilty).

After considering the statutory sentencing factors in 18 U.S.C. § 3553(a), this Court sentenced Hemphill to a split sentence, providing an interdependent mix of incarceration and supervision appropriate to Hemphill's offense and circumstances.

But *Little* invalidated this split sentence regime, unraveling the Court's intentionally tailored sentencing scheme. Hemphill does not ask this Court to correct her illegal sentence, seeking instead to end it early. But where a court has imposed an illegal sentence, the remedy is not to automatically terminate that sentence, thereby nullifying the court's carefully crafted punishment. Rather, the remedy for an unlawful sentence is to vacate the sentence in its entirety and impose a lawful sentence. *See Little*, 78 F.4th at 461 ("So we vacate Little's [split] sentence and remand to the district court for resentencing."); *see also Davenport v. United States*, 353 F.2d 882, 883-84 (D.C. Cir. 1965) ("The appropriate remedy in this situation would appear to be to vacate appellant's [illegal] sentence and remand his case to the District Court for resentencing. . . ."); *Hayes v. United States*, 249 F.2d 516, 517 (D.C. Cir. 1957) (upholding resentencing by district court, noting that "if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment").[5]

In the government's view there are three possible options available to the Court on resentencing, presented in no particular order: *first*, the Court may impose a term of probation or incarceration equal to the amount of time already served on probation or incarceration; *second*, the Court may impose a term of probation longer than the time already served on probation with credit for time already served on probation and additional credit for time spent incarcerated; and *third*,

---

[5] As noted in the government's motion to hold in abeyance, whether resentencing rather than early termination of probation is the proper remedy for split sentences invalidated by *United States v. Little*, 78 F.4th 453, 454 (D.C. Cir. 2023), is presently before the Circuit Court in *United States v. Caplinger*, Case No. 22-3057 (Doc. No. 2032794, filed Dec. 21, 2023).

the Court may impose a term of incarceration longer than the previously served term of incarceration, with credit for incarceration time already served and additional credit for time spent on probation.[6]

The D.C. Circuit's decision in *Little* shows that resentencing is the proper path for addressing an unlawful split sentence. Little had already served his term of imprisonment when he submitted his brief to the D.C. Circuit and, for this reason, he argued that "the proper remedy [for his split sentence] is to reverse and remand with instructions that [he] be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term." Br. for Appellant, *United States v. Little*, No. 22-3018 (July 28, 2022) at 40. The Court did not find merit in this position because it did not end Little's probationary term despite finding his split sentence to be unlawful. Instead, the Court "vacate[d] Little's sentence and remand[ed] to the district court for resentencing." *Little*, 78 F.4th at 461.

Resentencing after the imposition of an unlawful sentence is especially appropriate where, as here and as in *Little*, the district court imposed a split sentence of incarceration and probation for the commission of a single offense. This Court crafted a sentence comprised of two components—a term of incarceration and a term of probation—to best address the statutory sentencing factors of 18 U.S.C. § 3553(a). Both components of the sentence were integral parts of

---

[6] The resentencing in *Little* is instructive. Little was originally sentenced to a split sentence of 60 days' imprisonment and 36 months' probation. At the time of resentencing, after remand from the D.C. Circuit, Little had completed his term of imprisonment and approximately 18 months of probation. At the resentencing, the Court imposed a prison sentence of 150 days. *See Little*, No. 21-CR-315-RCL, Minute Entry for Resentencing (Jan. 25, 2024); *see also Little*, 21-CR-315-RCL, ECF 73 (Notes for Resentencing). The Court credited the 60 days of incarceration that Little previously served and gave an additional 30 days of credit against the new sentence for the 18 months of probation already served. Thus, after accounting for 90 days of credit for time previously served, Little will serve an additional 60 days of prison under the lawful sentence imposed at resentencing.

a unified package the Court constructed to fulfill its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). The components of Hemphill's sentence were inextricably intertwined, and simply vacating the term of probation without any further consideration—as Hemphill now requests—would undo the sentencing scheme carefully crafted by this Court.

Analogy to resentencing under the sentencing package doctrine underscores the need for resentencing here. "The sentencing package doctrine recognizes that when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains in light of the original plan." *United States v. Townshend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (internal quotation marks omitted). In other words, where multiple counts of conviction are "properly viewed as a package," the "sentences [are], in essence, one unified term of imprisonment." *Id.* at 570 (internal quotation marks omitted). And "successful attack by a defendant on some but not all counts of conviction" may necessitate "vacat[ing] the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).

The logic underlying resentencing in the sentencing package context applies equally in the split sentence context. Like Little, Hemphill was only convicted of a single count, and the sentence this Court imposed can only be attributed to that offense. The two components of Hemphill's sentence must be "properly viewed as a package" tailored to the statutory sentencing factors as they relate to Hemphill's single count of conviction. *Townshend*, 178 F.3d at 570. And since the

decision in *Little* unraveled the "overall plan" this Court crafted here, *id.* at 567, the Court should be given the opportunity, to "reconfigure the sentencing plan to ensure it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," *Greenlaw*, 554 U.S. at 253.

The connection between the two components of Hemphill's split sentence is further evidenced by the short term of incarceration originally imposed. The Court imposed a period of incarceration of 60 days, which is well below the statutory maximum sentence of six months, knowing that a significant period of supervision in the form of probation would follow. The sentence was fashioned holistically, and the probationary term was a companion to, and arguably an offset for, the lenient term of imprisonment. Now that the D.C. Circuit's decision in *Little* has invalidated the carefully balanced sentence originally imposed, the Court can address the interplay between these components and determine at resentencing how the initial sentence should be adjusted to bring it into conformity with what is legally authorized and to ensure that it achieves the intended punitive effect. This does not necessarily mean Hemphill would face a longer term of incarceration or the imposition of a new term of probation if resentenced. Hemphill is entitled to credit for the portion of her sentence already served.

Rather than seek resentencing, Hemphill's has dressed up her challenge to the legality of her split sentence as a motion for early termination of probation, seeking to eliminate one component of the holistic sentence this Court imposed for her conduct on January 6. The Court should deny this motion as the wrong procedural vehicle to challenge her illegal sentence. The proper mechanism for challenging an illegal sentence is through a direct appeal or a challenge pursuant to 28 U.S.C. § 2255, not a motion for early termination of probation.[7]

---

[7] The government recognizes, as noted by this Court in its denial of the abeyance motion, that Hemphill's motion "invokes 28 U.S.C. § 2255" but "does not reference any specific arguments for relief under Section 2255." ECF No. 50, at 1 n.1. The Court construed Hemphill's motion "as a

## IV.    Resentencing Would Not Violate Double Jeopardy

Resentencing Hemphill (should she file the appropriate motion) would not violate double jeopardy so long as she receives credit for time already served. *See United States v. Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *6 (D.D.C. Jan. 17, 2024) ("the Court may impose an additional punishment on Little so long as it appropriately credits the time Little served in prison and on probation against the punishment"); *United States v. Martin*, 363 F.3d 25, 37-38 (1st Cir. 2004) (unlawful term of probation must be credited against any subsequent sentence of incarceration); *United States v. Lominac*, 144 F.3d 308, 318 (4th Cir. 1998) (unlawful term of supervised release must be credited against any subsequent sentence of incarceration).[8]

So long as credit is given for time already served, the Double Jeopardy Clause does not bar the imposition of an increased punishment at resentencing where a defendant does not have a legitimate expectation of finality in the sentence originally imposed. *See United States v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987) ("If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence."); *see also United States v. DiFrancesco*, 449 U.S. 117, 137 (1980) ("the

---

motion for early termination of probation under 18 U.S.C. § 3564." *Id.* Should Hemphill properly seek relief under Section 2255 based on the D.C. Circuit's decision in *Little*, the government would consider waiving applicable procedural barriers, such as appellate or collateral review waivers, procedural defaults, or statutes of limitations.

[8] Because probation is a less restrictive penalty than incarceration, crediting time served on probation against a future term of incarceration, or crediting time incarcerated against a future term of probation, should not be "a day-to-day offset." *Martin*, 363 F.3d at 39. While the precise crediting ratio in this case is for the district court to consider, the specific ratio should derive from a "fact-based inquiry" that looks to "the specific conditions of [defendant's] probation and the effect of [any crediting] on the underlying purposes of the [sentencing statute] as set out in 18 U.S.C. 3553(a)." *Id.*

Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase").

This Court recently held on remand from the D.C. Circuit that Little lacked a legitimate expectation of finality and could be resentenced to additional punishment for two independent reasons—both of which apply to Hemphill. First, defendants like Little and Hemphill cannot "have a legitimate expectation that [their] sentence is final because it was illegal." *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5; *see also Fogel*, 829 F.2d at 88 (finding that one reason the defendant had a legitimate expectation of finality was because "an increase in appellant's term of probation was not necessary to bring the sentence into compliance with any statute" as "[t]he originally imposed sentence was not impermissible under the penalty statute"); *United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir. 1992) ("A defendant cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification.").

Second, a defendant who attacks an unlawful sentence—by appealing or otherwise challenging the sentence—can have no legitimate expectation of finality in the sentence originally imposed. *See Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5 (no legitimate expectation of finality where, "as in this case, the defendant voluntarily placed his sentence at issue by challenging it") (cleaned up); *see also Fogel*, 829 F.2d at 88 (finding that one reason the defendant had a legitimate expectation of finality was because "the increase in the original sentence [was] also not predicated on any action taken by the [defendant]"); *United States v. Andersson*, 813 F.2d 1450, 1461 (9th Cir. 1987) ("Andersson has no legitimate expectation of finality in the original sentence when he has placed those sentences in issue by direct appeal and has not completed serving a valid sentence."). Unlike Little, Hemphill did not challenge her sentence by filing a

timely appeal. Nevertheless, Hemphill seeks to terminate the probationary term by directly challenging the legality of her sentence. *Cf. Townshend*, 178 F.3d at 567 n.1 (finding no violation of double jeopardy and distinguishing cases that did "not involve situations in which a defendant has voluntarily placed his sentence at issue by challenging it via § 2255").[9]

The fact that Hemphill already began serving her split sentence—and even that she already completed the term of imprisonment originally imposed—does not change this calculus. On remand from the D.C. Circuit, Little made similar arguments to Hemphill's, seeking to simply end the probationary component of her sentence without facing resentencing. And he argued that any punishment beyond the prison term he already had served violated double jeopardy. But as the *Little* district court and many other courts have recognized, a more severe punishment can be imposed at resentencing even after service of the original unlawful sentence has begun. *See, e.g.*, *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5 ("An increased punishment is permissible even if the defendant has begun serving the original, illegal sentence, although any punishment already incurred must be credited against the increased punishment."); *Hayes*, 249 F.2d at 517-18 ("a sentence which does not conform with the applicable statute [because it is below the statutory minimum] may be corrected though defendant . . . has begun to serve it"); *Lominac*, 144 F.3d at 317-18 (remanding to district court for resentencing after vacating supervised release component

---

[9] The fact that the Court properly construed Hemphill's request as a motion for early termination of probation under 18 U.S.C. § 3564, ECF No. 50, at 1 n.1, does not mean that Hemphill has a legitimate expectation of finality in her split sentence. Hemphill's invocation of § 2255 in her motion confirms her intent to challenge her sentence. And, even if Hemphill had not invoked § 2255, challenging the legality of a sentence through the improper avenue of a motion for early termination of probation is nothing more than an attempt to have one's cake and eat it too. Defendants should not be allowed to challenge the legality of a sentence through improper means and then claim that they maintain a legitimate expectation of finality in the illegal split sentence precisely because they did not raise the challenge through the proper means. Regardless, as discussed above, Hemphill can have no legitimate expectation of finality in her split sentence because it is illegal.

of split sentence, noting that term of incarceration could be adjusted upwards even after defendant completed originally imposed term of incarceration), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000); *United States v. Versaglio*, 85 F.3d 943, 949 (2d Cir. 1996) (remanding to district court to consider imposition of increased fine after invalidating incarceration component of split sentence even after defendant already paid originally imposed fine in full); *United States v. Holmes*, 822 F.2d 481, 498 (5th Cir. 1987) ("Correction of a sentence can occur even if service of the sentence has begun, even if the correct sentence may be more onerous to the defendant than the original.") (citation omitted); *Christopher v. United States*, 415 A.2d 803 (D.C. 1980) (affirming sentencing court's sua sponte correction of illegal split sentence by eliminating probation component and imposing term of incarceration greater than that originally imposed where defendant had already begun serving sentence).

A line of Supreme Court cases—starting with *Ex parte Lange*, 85 U.S. 163 (1873), and including *In re Bradley*, 318 U.S. 50 (1943)—do not hold otherwise. *Lange* and *Bradley* involved defendants sentenced to a fine and imprisonment under statutes that permitted the imposition of either a fine or imprisonment. In *Lange*, the Supreme Court held that the defendant was entitled to immediate release because he had already paid the statutory maximum fine in full, stating that resentencing him to the alternate punishment of imprisonment would "punish[] [him] twice for the same thing." 85 U.S. at 175. Similarly, in *Bradley*, the Supreme Court held that the defendant "[wa]s entitled to be freed of further restraint" because he had already paid the fine in full. 318 U.S. at 52. The full payments of the fines in *Lange* and *Bradley* meant that those defendants had already fully satisfied one of two authorized alternative penalties such that no additional punishment could be imposed because anything more would exceed the punishment that was statutorily authorized. In other words, these cases stand for the unassailable but narrow proposition

14

that "a defendant may not receive a greater sentence than the legislature has authorized." *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980).

Multiple courts, including the Supreme Court, have recognized the limited application of *Lange* and *Bradley*. *See, e.g., Jones v. Thomas*, 491 U.S. 376, 383 (1989 ("Lange therefore stands for the uncontested proposition that the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature, and not for the broader rule suggested by its dictum.") (citation omitted); *id.* at 386 ("we do not think the law compels application of Bradley beyond its facts"); *see also Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *4 ("Little's [double jeopardy] argument fails, however, because the case law does not support such a stark, sweeping reading of *Lange* or *Bradley*."). Indeed, *Lange* and *Bradley* are a narrow exception to the general rule that allows for resentencing after a defendant successfully challenges an unlawful sentence, even if service of the sentence has already begun and even if the corrected sentence is more onerous than the original. For example, the Fifth Circuit has recognized that the *Lange*/*Bradley* limitation applies only where one of the alternative penalties imposes the maximum authorized sentence and is satisfied in full:

> The *Bradley* cases stand apart from this general rule, however. The contempt statute authorizes only a fine or imprisonment, and the full payment of a fine satisfies one lawful alternative sentence. Sentences involving imprisonment not yet fully served or a term of imprisonment below the maximum authorized by an offense statute are not analogous, nor are cases in which a defendant appeals a dual sentence before satisfying either prong. What differentiates the *Bradley*-type case from these other cases is that a *Bradley* defendant who has paid his fine has suffered the maximum sentence authorized by the statutes.

*Holmes*, 822 F.2d at 498-99; *see also id.* at 499 n.30 (listing cases not controlled by *Bradley* because, among other things, they involved "resentencing . . . after sentences that were below the maximum authorized by offense statutes, or after a defendant appealed the entirety of his sentence or challenged a sentence but had not fully satisfied a sentence as great as the law allows").

15

Courts have recognized other limitations to the *Lange/Bradley* rule that are relevant here. For example, in *Lominac*, the Fourth Circuit held that "*Bradley* does not bar resentencing" where two components of an unlawful split sentence are of the type that can be credited against each other. 114 F.3d at 318. The defendant in *Lominac* was originally sentenced to both imprisonment and supervised release even though the applicable statute only authorized the imposition of incarceration in the defendant's particular circumstances. *Id.* at 317-18. And by the time the Fourth Circuit heard the appeal, the defendant had already served the entire term of incarceration and some portion of the term of supervised release imposed under the unlawful split sentence. *Id.* at 317. Nevertheless, the Fourth Circuit found that remanding to the district court for resentencing was appropriate because, "[h]ad the court recognized that it lacked authority to impose the . . . term of supervised release, it might have validly concluded that a prison term of longer than six months was appropriate." *Id.* The Fourth Circuit distinguished *Bradley*, noting that while the "'alternative sentences in *Bradley*'" of imprisonment and a fine "'were of a different type' and it simply was not 'possible to credit a fine against time in prison,'" "it is possible to credit [defendant's] time served on supervised release against any time to be served in prison." *Id.* at 318 (quoting *Thomas*, 491 U.S. at 384). In other words, "[u]nlike the monetary sanction of a fine, which cannot be converted into an equivalent temporal sanction, [defendant's] term of supervised release restrained his liberty for a known period of time that can be credited against any future sentence of imprisonment." *Id.*

Similarly, in *Versaglio*, the Second Circuit held that *Lange/Bradley* does not prohibit resentencing a defendant to an increased fine on remand where the district court had originally imposed an unlawful split sentence of a fine and imprisonment and where the defendant had already paid the full amount of the originally imposed fine. 85 F.3d at 948. The Second Circuit

vacated the term of imprisonment because the fine had already been paid and noted that "[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of a fine in light of the unavailability of imprisonment." *Id.* (emphasis in original). Thus, recognizing that the two components of the original split sentence were intertwined, the Second Circuit remanded the case to the district court to "consider[] whether to make an upward adjustment in the amount of the fine" in order to maintain "the aggregate punitive effect of [the original] sentence." *Id.* at 949.

Here, *Lange/Bradley* provides no bar to resentencing Hemphill to a longer term of incarceration, or alternatively to a term of probation, for at least two distinct reasons. First, unlike *Lange* and *Bradley*, the alternative sentences here do not involve penalties that are impossible to credit against each other. Rather, as described above, any time previously served in prison and any time previously served on probation should be credited against any future sentence of imprisonment or probation imposed at resentencing. *See Lominac*, 114 F.3d at 318; *Martin*, 363 F.3d at 37-38; *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *6.

Second, the term of incarceration that Hemphill completed was well below the statutory maximum of six months, and resentencing her to a longer term of incarceration or alternatively to a term of probation (taking account of any time already served) would not exceed the maximum punishment authorized by statute. Indeed, the district court intentionally crafted a dual sentencing scheme suited to Hemphill's specific offense and circumstances in which each component weighed against the other and played an integral part in the overall plan. "Had the court recognized that it lacked authority to impose the [split sentence], it might have validly concluded that a prison term of longer than [35 days] [or that a standalone probationary term] was appropriate." *Lominac*, 144 F.3d at 317. Thus, the district court "should have the option of considering whether to make an

upward adjustment in the" term of imprisonment or whether to impose a standalone term of probation at resentencing. *Versaglio*, 85 F.3d at 948.

## V.    <u>Hemphill Has Not Met The Standard For Early Termination Of Probation</u>

The Court may grant a motion for early termination of probation if, "after considering the factors set forth in section 3553(a)," "it is satisfied that [early termination] is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). Hemphill offers no arguments for early termination of probation other than the fact that the D.C. Circuit found that a split sentence of incarceration and probation may not be imposed for the commission of a single petty offense. But the illegality of Hemphill's split sentence is not grounds for early termination of probation.

The "interests of justice" do not militate in favor of immediate termination of Hemphill's probation because her split sentence is illegal under *Little*. As explained above, the proper avenue for addressing the illegality of a split sentence of incarceration and probation is resentencing—not simply ending one component of an unlawful sentencing package. The interest of justice is not served by circumventing the proper remedy to an illegal split sentence. This is especially true where, as here, the Court carefully crafted a split sentence with two components—a term of incarceration, followed by a term of probation—to address the specific circumstances of a defendant's offense and satisfy its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). Granting Hemphill's requested relief would allow her to escape the full penalty for her crime after having served one component of an illegal sentence that alone is "[in]sufficient . . . to comply with the purpose of [the sentencing statute]." *Id.*

Moreover, Hemphill has raised nothing about her conduct that weighs in favor of early termination of probation, and mere compliance with the conditions of supervision does not warrant early termination. *See e.g.*, *United States v. Wesley*, 311 F. Supp. 3d 77, 81–82 (D.D.C. 2018) ("even perfect compliance with conditions of release does not qualify as 'exceptionally good behavior' warranting early termination").

Finally, consideration of the Section 3553(a) factors confirms that probation should not be terminated early. Hemphill's conduct on January 6 showed no respect for the law. Not only did she participate in the attack on the Capitol but she encouraged others throughout the day to press forward and continue their unlawful actions. The sentence imposed by the Court was carefully crafted to reflect the serious nature of the conduct for which Hemphill was charged and convicted.

## VI.   <u>Conclusion</u>

For the reasons set forth above, the government respectfully requests that the Court deny Hemphill's motion for early termination of probation and, upon the filing of proper motion pursuant to 28 U.S.C. § 2255, resentence her to a legal sentence.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:   <u>/s/ Sonia Mittal</u>
SONIA MITTAL
Assistant United States Attorney
IL Bar No. 6314706
601 D St NW
Washington DC, 20530
Sonia.Mittal@usdoj.gov
(202) 821-9470